**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LYNN AMA, CAROLANNE HOLDER, TIFFINI SMITH and MAGGY GOUSSE, on behalf of themselves and all others similarly situated,** | **CASE NO.:** |
| | **<u>CLASS ACTION</u>** |
| **Plaintiffs,** | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |
| **v.** | |
| **PIPING ROCK HEALTH PRODUCTS INC., NATURE'S TRUTH LLC.** | |
| **Defendants** | |

Plaintiffs Lynn Ama, CarolAnne Holder, Tiffini Smith and Maggy Gousse, ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Piping Rock Health Products Inc. and Nature's Truth, LLC. ("Nature's Truth" or "Defendants"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1.      This is a proposed class action on behalf of New York, California, Pennsylvania and Nationwide classes (collectively, "Class") of consumers seeking redress for Defendants' deceptive practices associated with the advertising, labeling, and sale of its Nature's Truth Triple Strength Apple Cider Vinegar Dietary Supplement ("Product").

2.      Apple Cider Vinegar ("ACV") is a type of vinegar made from fermented apple juice. It consists principally of acetic acid, which is responsible for its taste and numerous health benefits including the promotion of weight loss, lowering of blood sugar and cholesterol levels, improvement of gut and heart health and reduction of inflammation, among others.

3.      The health benefits associated with ACV have made it a popular choice among consumers. In 2024, U.S. ACV sales exceeded $300 million with continued growth expected over the next ten years.

4.      "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular

source…. [C]onsumers rely on the accuracy of those representations in making their buying decisions."[1]

5.     While this proposition holds true with respect to all consumer goods, it is even more pertinent when it comes to consumer goods that are directly related to a consumer's health and wellness, as is the case with dietary supplements such as ACV. Its importance is even more consequential when, as is the case here, consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase but instead must rely entirely on the honesty and integrity of the manufacturers and sellers of the product.

6.     Nature's Truth markets, advertises, and sells a line of Apple Cider Vinegar capsules. The Product's principal display panel claims that it is Apple Cider Vinegar. The Supplement Fact Section states that each serving contains 1,200 mg of Apple Cider Vinegar.

---

[1] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

 

7.    By law, any product claiming to be Apple Cider Vinegar must contain a minimum of 4% acetic acid. Anything less, the product is not and cannot be called Apple Cider Vinegar and its content rendered inefficacious and worthless.

8.    Plaintiffs conducted analytical testing on 12 representative samples of Nature's Truth's Apple Cider Vinegar Gummies. The testing revealed that the Products consist of approximately only 2.0% acetic acid, rendering their contents worthless for their intended purpose and their claim to be "Apple Cider Vinegar" false, misleading, deceptive and unlawful.

9.    Throughout the applicable Class Period, Defendants have falsely represented the true nature of their Product. As a result of this false and misleading labeling, Defendants were able to sell their Products to thousands of unsuspecting consumers throughout New York, California, Pennsylvania and the United States.

10.     Plaintiffs allege that Defendants conduct is in breach of express warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., N.Y. Gen. Bus. Law §§ 349 and 350 et seq., and 73 P.S. § 201, et seq.

## JURISDICTION AND VENUE

11.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiffs Smith and Gousse are California residents, Plaintiff Holder is New York resident and Plaintiff Ama is a Pennsylvania resident. Defendant Nature's Truth is a New York company which maintains its principal place of business in Bohemia, New York. Defendant Piping Rock is a Delaware corporation which maintains its principal place of business in Bohemia, New York. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendants from their transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendants have received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

13.     Plaintiff Tiffini Smith is a resident of Signal Hill, California.

14.     Ms. Smith purchased Defendants' Apple Cider Vinegar Products on approximately bi-monthly basis from Walmart stores between 2022-2024 located near her residence. Ms. Smith principally purchased ACV to assist with weight loss.

15.     Ms. Smith made each of her purchases after reading and relying on Defendants' Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

16.     Ms. Smith believed that Defendants lawfully marketed and sold the Product.

17.     Ms. Smith relied on Defendants' labelling and was misled thereby.

18.     Ms. Smith would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

19.     Ms. Smith was injured in fact and lost money as a result of Defendants' improper conduct.

20.     Plaintiff Maggy Gousse is a resident of Los Angeles, California.

21.     Ms. Gousse purchased Defendants' Apple Cider Vinegar Products once to twice a month between 2022-2024 from one or more of Wholefoods, Sprouts, Vitamin Shoppe and Marshalls stores. Ms. Gousse principally purchased ACV to assist with weight control/loss.

22.     Ms. Gousse made each of her purchases after reading and relying on Defendants' Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

23.     Ms. Gousse believed that Defendants lawfully marketed and sold the Product.

24.     Ms. Gousse relied on Defendants' labeling and was misled thereby.

25.     Ms. Gousse would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

26.     Ms. Gousse was injured in fact and lost money as a result of Defendants' improper conduct.

27.     Plaintiff Lynn Ama is a resident of Havertown, Pennsylvania.

28.     Ms. Ama purchased Defendants' Apple Cider Vinegar Products approximately every two weeks from Walmart locations near her residence during 2021-2024. Ms. Ama principally purchased ACV to assist with weight loss.

29.     Ms. Ama made each of her purchases after reading and relying on Defendants' Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

30.     Ms. Ama believed that Defendants lawfully marketed and sold the Product.

31.     Ms. Ama relied on Defendants labelling and was misled thereby.

32.     Ms. Ama would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

33.     Ms. Ama was injured in fact and lost money as a result of Defendants' improper conduct.

34.     Plaintiff CarolAnne Holder is a resident of New York, New York.

35.     Ms. Holder purchased Defendants Apple Cider Vinegar Products in or around September 2024 from Vitacost or Westerly Natural Markets in New York. Ms. Holder principally purchased ACV to assist with weight control/loss.

36.     Ms. Holder made each of her purchases after reading and relying on Defendants' Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

37.     Ms. Holder believed that Defendants lawfully marketed and sold the Product.

38.     Ms. Holder relied on Defendant's labeling and was misled thereby.

39.     Ms. Holder would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

40.     Ms. Holder was injured in fact and lost money as a result of Defendants improper conduct.

41.     Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California laws and the Products are misbranded and adulterated; therefore, the Products are worth nothing or at a minimum less than what Plaintiff and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

42.     Defendant Nature's Truth, LLC is incorporated and headquartered in Bohemia, New York. Nature's Truth sells a wide variety of dietary supplements across the United States, including in New Yor, California and Pennsylvania. Their Products are available for purchase on-line as well as from a variety of conventional brick and mortar retail locations. Upon information and belief, Nature's Truth is a wholly owned subsidiary of Defendant Piping Rock Health Products.

43.     Defendant Piping Rock Health Products, Inc. is a global vitamin and supplement manufacturer comprised of several brands including Nature's Truth. It is a Delaware limited liability company headquartered in Bohemia, New York.

## GENERAL ALLEGATIONS

### A. Apple Cider Vinegar

44.     Apple cider vinegar is a type of vinegar made through the fermentation of apple juice. The juice is exposed to yeast to ferment the sugars into alcohol. Bacteria converts the alcohol into acetic acid, the primary active compound in vinegar responsible for its taste and health benefits.

45.     "Research suggests that apple cider vinegar may have beneficial health properties, including antimicrobial and antioxidant effects."[2]   It has become a popular over the counter dietary supplement choice among consumers because of its potential beneficial effects on a myriad of health issues including: weight loss,  blood sugar levels, cholesterol levels, and heart health, among others.

46.     Acetic acid is apple cider vinegar's primary active compound, giving it its strong sour smell and flavor and most importantly, is responsible for the health benefits associated with apple cider vinegar.[3] While the most efficacious form of ACV is typically as a liquid, ACV gummies and capsules were created to deliver the "benefits" of ACV without the harsh taste of pure vinegar.

47.     As a result of its numerous health benefits, Apple cider vinegar has become a popular choice among consumers.  "Apple cider vinegar products are continuing to grow in popularity as consumers look for a panacea that can address an array of health concerns. For blood pressure and cholesterol support to weight management and more, consumers are finding apple cider vinegar a useful supplement."[4] As a result, the global apple cider vinegar market size was estimated at  $644.44 million in 2024 and projected to grow over 1 billion by 2032.[5]

---

[2] *6 Health Benefits of Apple Cider Vinegar, Backed by Science*, Healthline.  Available at https://www.healthline.com/nutrition/6-proven-health-benefits-of-apple-cider-vinegar#supports-weight-loss. Last visited 2-21-25.

[3] *Id.*

[4] Why is apple cider vinegar so popular?, Nutritional Outlook, August 18 2023. Available at https://www.nutritionaloutlook.com/view/why-is-apple-cider-vinegar-so-popular. Last visited November 30, 2024.

[5] Apple Cider Vinegar Market Size, Share & Industry Analysis, By Source (Organic and Conventional), By Form (Liquid and Tablet), By Distribution Channel (Hypermarkets/Supermarkets, Online Channels, Traditional Grocery Stores, and Others), and Regional Forecast, 2024-2032, Fortune Business Insights, November 04, 2024.

Case 1:25-cv-03787-AS    Document 1    Filed 05/06/25    Page 10 of 35

**B.  <u>Acetic Acid</u>**

48.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of dietary supplements to the consuming public.  21 U.S.C §301.[6] It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

49.    Among its mandates, the principal display panel of a dietary supplement shall bear as one of its principal features a statement of the identity of the commodity. 21 C.F.R. §101.3 As a general matter, the statement of identity of a dietary supplement is the name specified by federal law or regulation, or, if no such name is specified, its common or usual name.[7]

50.    The U.S. Food and Drug Administration ("FDA") has issued a Compliance Policy Guide ("CPG") on the labeling of vinegars. CPG §525.825 Vinegar, Definitions - Adulteration with Vinegar Eels. The FDA policy set forth in the CPG is unequivocal.

>    FDA considers the following to be satisfactory guidelines for the labeling
>    of vinegars:

---

Available at https://www.fortunebusinessinsights.com/apple-cider-vinegar-market-105136. Last visited November 22, 2024.

[6] In 1994 the FDCA was amended by the Dietary Supplement Health and Education Act of 1994 to bring dietary supplement under the broader purview of the FDCA. Among other things, it established a series of Good Manufacturing Practices to be employed by manufacturers of dietary supplements to ensure the products meet their label claims.

[7] U.S. Food & Drug Administration Dietary Supplement Labeling Guide: Chapter II. Identity Statement (2016)(" Dietary Supplement Labeling Guide"). Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-ii-identity-statement. Last visited November 22, 2024.

-10-

Natural vinegars as they come from the generators normally contain in excess of 4 grams of acetic acid per 100 mL. When vinegar is diluted with water, the label must bear a statement such as "diluted with water to __ percent acid strength", with the blank filled with the actual percent of acetic acid - in no case should it be less than 4 percent. Each of the varieties of vinegar listed below should contain 4 grams of acetic acid per 100 mL.(20oC).

VINEGAR, CIDER VINEGAR, APPLE VINEGAR. The product made by the alcoholic and subsequent acetous fermentations of the juice of apples.[8]

51.    Any product claiming to be apple cider vinegar but which contains less than 4% acetic acid is not apple cider vinegar. Labeling it as such is false, misleading, deceptive and in violation of the law. Moreover, failure to provide the minimum of 4% acetic acid eliminates any of the potential health benefits that could be derived from consuming apple cider vinegar, thereby further rendering this Product worthless.

52.    The FDCA requires every supplement to accurately list its "dietary ingredients [] includ[ing] the quantity of each such ingredient per serving[.]" 21 U.S.C. § 343(q)(5)(F)(ii). "A food with a label declaration of a vitamin . . . shall be deemed to be misbranded under section 403(a) of the FDCA unless it meets the following requirement . . . [w]hen a vitamin . . . meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id*. §101.9(g)(4)(i).

53.    A dietary supplement is also considered adulterated when 21 U.S. Code § 342 (g)(1)   "…it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMP")]."  Here, among other things, cGMP requires that: that a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3 and that

---

[8] https://www.fda.gov/media/71937/download.

each batch is tested to verify specifications for identity, purity, strength, composition. 21 C.F.R. §111.75(c).

54.     Although its axiomatic – that a dietary supplement label must accurately reflect the identity of its ingredients and their respective amounts -- the FDA's Dietary Supplement Labeling Guide makes this abundantly clear.

> Must dietary ingredients that I have added to my products be present at 100% of the amount that I declare?
>
> For dietary ingredients that are specifically added, **your product must contain 100% of the volume or weight that you have declared on the label**, with the exception of a deviation that is attributable to the analytical method. **Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law**.

21 CFR §101.9(g)(3) and (g)(4)(emphasis added).[9]

55.     While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendants' labeling, significantly, Plaintiffs do not seek to prosecute or enforce any aspect of the FDCA. Plaintiffs' allegations that Defendants failed to properly label its Products independently give rise to their stated causes of action detailed below.

## C.  Plaintiffs' Analytical Testing

56.     Plaintiffs conducted analytical testing on 12 samples of Defendants' ACV capsules. Test results demonstrate that the Products contain only about 2.0% acetic acid

---

[9] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling. Last visited November 30, 2024

and therefore do not contain the promised 1,200 mg of Apple Cider Vinegar and are worthless.[10]

57.    As detailed above, a product containing less than 4% acetic acid, by law, is not apple cider vinegar. Naming, marketing and selling it as such is false, misleading and in violation of the law.

58.    By failing to properly label its Product, Defendants have misled and deceived consumers in violation of the laws pled herein.

59.    As a result of Defendants' unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

**D.  No Adequate Remedy At Law**

60.    Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

61.    Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

62.    Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law)[11], which

---

[10] Although not required to do so, Plaintiffs conducted testing consistent with the FDA's protocol under 21 C.F.R. §101.9(g)(2). Testing was conducted on 12 samples of Nature's Truth's ACV gummies (Lot Nos.135969, 137476, and 134996). The specific lot numbers tested were transmitted to Defendants in the form of a demand letter.

[11] California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law").

does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

63.     Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendants continue to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

64.     Further, injunctive relief, in the form of affirmative disclosures, are necessary to dispel the public misperception about the Product that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

65.     An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

66.     Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and

expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

67.    Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

68.    Plaintiffs saw and relied on Defendants' misleading labeling of its Products.

69.    Nature's Truth guaranteed, and Plaintiffs believed that the purchased Products contained ACV, and in the amounts promised on the label.

70.    Plaintiffs believed that the Products were lawfully marketed and sold.

71.    In reliance on the claims made by Defendants regarding the qualities of their Products, Plaintiffs paid for the Product, or at a minimum, paid a price premium for the Product.

72.    As a result of their reliance on Defendants' misrepresentations, Plaintiffs received Products that did not contain the promised ingredient, or at a minimum, not in the specified amounts.

73.    Plaintiffs received Products that were unlawfully marketed and sold.

74.    Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

75.     Defendants know that the statement of identity of a product is material to a consumer's purchasing decision.

76.     Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

77.     By engaging in the false and deceptive conduct alleged herein, Defendants reaped and continue to reap financial benefits in the form of sales and profits from its Products.

78.     Plaintiffs, however, would be willing to purchase Defendants' Apple Cider Vinegar Products again in the future should they be able to rely with any confidence on Defendants' marketing as truthful and not deceptive.

79.     Without an injunction, however, Plaintiffs will not be able to purchase Defendants Product in the future, even though Plaintiffs may wish to, as simply viewing the ingredient list on Defendants Product will not afford Plaintiffs the opportunity to determine the actual contents of the Product. Consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase but instead are reliant entirely on the honesty and integrity of the manufacturers and sellers of the product.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a.     **New York:** All persons in California who purchased the Class Products in New York during the Class Period; [12]

b.     **California:** All persons in New York who purchased the Class Products in California during the Class Period;

---

[12] Collectively referred to as "Class or Classes."

c.     **Pennsylvania:** All persons in Pennsylvania who purchased the Class Products in Pennsylvania during the Class Period;

d.     **Nationwide:** All persons nationwide who purchased the Class Products anywhere in the United States during the Class Period;

e.     **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

81.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

82.     Excluded from the Classes are: (i) Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

83.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

84.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

85.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.     Whether Defendants marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

b.     Whether Defendants omitted or misrepresented material facts in connection with the sales of their Products;

c.     Whether Defendants participated in and pursued the common course of conduct complained of herein;

d.     Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

e.     Whether Defendants' actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f.    Whether Defendants' actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g.    Whether Defendants' actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h.    Whether Defendants' actions violate N.Y. Gen. Bus. Law § 349 et seq;

i.    Whether Defendants' actions violate N.Y. Gen. Bus. Law § 350 et seq;

j.    Whether Defendants' actions violate N.Y. Gen. Bus. Law § 350 et seq;

k.    Whether Defendants' actions violate 73 P.S. § 201, et seq.

l.    Whether Defendants' actions constitute breach of express warranty;

m.    Whether Defendants should be enjoined from continuing the above-described practices;

n.    Whether Plaintiff and members of the Class are entitled to declaratory relief; and

o.    Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

86.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendants' Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

87.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

88.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will

likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendants' conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

89.    In the alternative, the Class may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

90.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.


## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Breach of Express Warranty

91.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

92.    Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607, Cal. Com. Code §2313 and 13 Pa.C.S. § 2313. Defendants were afforded reasonable notice of this claim in advance of the filing of this complaint.

93.    Defendants made express warranties to Plaintiffs and members of the Class that the Product they purchased was Apple Cider Vinegar and present in a certain amount.

94.    The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product and promised ingredients contained therein marketed by Defendants specifically relates to the goods being purchased and became the basis of the bargain.

95.    Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

96.    Defendants breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

97.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain any value, or at a minimum did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

98.    Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq.***
**(On Behalf of the California Subclass)**

99.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

100.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

101.    A business act or practice is "unlawful" if it violates any established state or federal law.

102.    Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

   a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

   b.    21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

   c.    21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

   d.    21 U.S.C. §342(g)(1) which deems a dietary supplement adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

103.    California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the

federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

104.    Each of Defendants violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), including, but not limited to, the following sections:

105.    Section 110100 (adopting all FDA regulations as state regulations);

106.    Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account");

107.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

108.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised");

109.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded");

110.    Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

111.    Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

112.    Each of the challenged omissions, statements, and actions by Defendants violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

113.    Defendants' conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

114.    By committing the unlawful acts and practices alleged above, Defendants have engaged, and continue to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

115.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

116.    Through its unlawful acts and practices, Defendants obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all members of the Class to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Subclass)**

117.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

118.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

119.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

120.    Defendants violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendants for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §17200, *et seq.*

121.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

122.    Through its unfair acts and practices, Defendants obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and request that this Court cause Defendants to restore this money to Plaintiffs and the members of the Class, to disgorge the profits Defendants made on their Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FOURTH CAUSE OF ACTION
**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Subclass)**

123.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

124.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

125.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

126.    Defendants' acts and practices of mislabeling its Products in a manner to suggest they contain ingredients in promised amounts which they do not contain.

127.    As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendants have been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

128.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

129.    Through their fraudulent acts and practices, Defendants have improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and the Class, to disgorge the profits Defendants have made, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**
**False Advertising**
**Violation of California Business & Professions Code §§ l7500, *et seq.***
**(On Behalf of the California Subclass)**

130.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

131.     Defendants use advertising and packaging to sell its Products. Defendants disseminate advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

132.     In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

133.     The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

134.     Through their deceptive acts and practices, Defendants have improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and the members of the Class, and to enjoin Defendants from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendants false and/or misleading advertising.

135.    Pursuant to California Business & Professions Code §17535, Plaintiffs seek an Order of this Court ordering Defendants to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendants to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendants, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq.*
### (On behalf of the California Class)

136.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

137.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA").

138.    Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

139.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

140.    Defendants violated, and continue to violate, the CLRA in at least the following respects:

   a.    §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b.      §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c.      § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

141.    Defendants knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

142.    The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendants' labels which formed a material basis for their respective decisions to purchase the Products. Moreover, based on the very materiality of Defendants' misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

143.    Defendants carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

144.    Plaintiffs and the members of the Class request that this Court enjoin Defendants from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendants are permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendants' Products will be damaged by their acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

145.    On October 17, 2024, Plaintiffs served Defendant Natures Truth a CLRA demand pursuant to Civil Code §1782, notifying them of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. A

similar letter was transmitted to Defendant Piping Rock on or about April 21, 2025. If Defendants do not correct the practices alleged herein and remunerate the putative class within 30 of receipt of the demand letter, Plaintiffs will amend the complaint to seek the full measure of damages pursuant to Civil Code § 1780(a).

**SEVENTH CAUSE OF ACTION**
**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 et seq.)**
**(On behalf of the New York Subclass)**

146.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

147.    Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

148.    Defendants' labeling and marketing of their Product, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Holder and the New York Subclass as to the characteristics and value of the Products.

149.    Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the

Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

150.     In accordance with subsection (h) of Section 349, Plaintiff Holder seeks an order enjoining Defendants from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Defendants will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Defendants' deceptive acts and practices, Plaintiff Holder and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Holder and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

**<u>EIGHTH CAUSE OF ACTION</u>**
**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.*)**
**(On Behalf of the New York Subclass)**

151.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Holder brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

152.     Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

153.     New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is

misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also

provides that advertising can be false by omission, as it further defines "false advertising"

to include "advertising [that] fails to reveal facts material in the light of such

representations with respect to the commodity . . . to which the advertising relates." *Id.*

154.    Defendants' labeling, marketing, and advertising of its Bar, as alleged

herein, is "misleading in a material respect" and, thus, constitutes "false advertising," as

it falsely represents the Products as consisting of characteristics and lawfulness that they

do not possess.

155.    Plaintiff Holder seeks an order enjoining Defendants from continuing this

false advertising. Absent enjoining this false advertising, Defendants will continue to

mislead Plaintiff Holder and the other members of the New York Subclass as to the

characteristics of its Products, and in doing so, irreparably harm each of the New York

Subclass members.

156.    As a direct and proximate result of Defendants' violation of New York

General Business Law §350, Plaintiff Holder and the other members of the New York

Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing,

Plaintiff Holder and other members of the New York Subclass also seek actual damages

or statutory damages of $500 per violation, whichever is greater, as well as punitive

damages. N.Y. GEN. BUS. LAW § 350-e.

**<u>NINTH CAUSE OF ACTION</u>**
**Violation of Pennsylvania Unfair Trade Practices**
**and Consumer Protection Law**
**73 P.S. § 201, *et seq.***
**(On Behalf of the Pennsylvania Subclass)**

157.    Plaintiffs incorporate each and every allegation contained in the

paragraphs above as if restated herein.

158.    This cause of action is brought pursuant to Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et seq. (i.e. "UTPCPL").

159.    Pennsylvania's UTPCPL, 73 P.S. § 201-2(3), defines "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

160.    The UTPCPL makes it unlawful for a person or business to employ "Unfair methods of competition" and "unfair or deceptive acts or practices" by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have. 73 P.S.§ 201-2(4)(v).

161.    The UTPCPL prohibits persons from employing "[u]nfair methods of competition" and "unfair or deceptive acts or practices," which are defined to include, *inter alia*, the following conduct:

a.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ." 73 P.S. § 201-2(4)(v); or

b.    "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."73 P.S. § 201-2(4)(xxi).

162.    Defendants are "persons" under the UTPCPL.73 P.S. § 201-2(2)

163.    Defendants have engaged in unfair or deceptive acts or practices in violation of UTPCPL as set forth above.

164.    Defendants' practices as described herein are unfair or deceptive acts or practices that violate UTPCPL because the practices were and are intended to deceive

purchasers, including Plaintiffs and occurred and continue to occur in the course of conduct involving trade and commerce.

165.    Defendants knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

166.    The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendants' labels which formed a material basis for their respective decisions to purchase the Products. Moreover, based on the very materiality of Defendants' misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

167.    Defendants carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

168.    As a direct result of the foregoing acts and practices, the Defendants received, continue to receive, or will receive in the future, income, profits, and other benefits, which they would not have received if Defendants had not engaged in the violations of the UTPCPL as described in this Complaint.

169.    Pursuant to Pennsylvania UTPCPL § 201-9.2, *et seq.*, Plaintiffs and the members of the Class seek an order requiring Defendants to disclose the misrepresentations and/or omissions, and an order awarding Plaintiffs and the Class Members actual or compensatory damages, including treble damages; compelling restitution of the unnecessary financial sums wrongfully acquired by Defendants as a result of the misrepresentations and omissions; compelling the Defendants to pay civil penalties not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted; compelling the Defendants to disgorge its ill-gotten profits; compelling the Defendants to pay the costs of the suit,

including attorneys' fees; awarding Plaintiffs prejudgment interest and delay damages; and awarding Plaintiffs such other, further, and different relief as this Court may deem just.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendants' Product or restitutionary disgorgement of the profits Defendants obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory penalties for Causes of Action for which they are available.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and Order enjoining Defendants from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.      An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.    An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.    Such other and further relief as may be deemed necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: May 6, 2025                    Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiffs*