UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNN AMA, CAROLANNE HOLDER, TIFFINI SMITH and MAGGY GOUSSE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       -against-<br><br>NATURE'S TRUTH LLC,<br><br>                   Defendant. | 25-cv-3787 (AS)<br><br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiffs are consumers of defendant Nature's Truth's apple cider vinegar dietary supplement ("Supplement"). They say the Supplement isn't actually apple cider vinegar, so Nature's Truth deceived them, in violation of various New York, California, and Pennsylvania state laws.

Nature's Truth has moved to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, Nature's Truth's motion is GRANTED IN PART and DENIED IN PART. Only the claims based on New York's General Business Law (GBL) survive, but plaintiffs are granted leave to amend the dismissed claims.

## BACKGROUND

Apple cider vinegar is a type of vinegar made from fermented apple juice. Dkt. 24, First Am. Compl. ("FAC") ¶ 43. The juice is exposed to yeast to turn the sugars into alcohol, and then bacteria break down the alcohol into acetic acid. *Id.* Some use apple cider vinegar products for weight loss and other alleged benefits, and some say the acetic acid "is what gives apple cider vinegar its health benefits and preservative qualities." *Id.* ¶¶ 44–46. That use is widespread: the global apple cider vinegar market size was estimated at nearly $650 million in 2024 and is projected to grow to over $1 billion by 2032. *Id.*¶ 46.

Because apple cider vinegar can taste sour in its liquid form, the industry developed a method to convert apple cider vinegar into powder. *Id.* ¶ 47. According to plaintiffs, those conversion methods are designed to create a powder that contains "the same amounts of acetic acid, nutrients, and components as liquid vinegar thereby ensuring consumers receive the same health benefits as the liquid form." *Id.* ¶ 48.

Between 2022 and 2024, the four plaintiffs purchased the Supplement in the form of powder capsules, and they all purchased it to assist with managing their weight. *Id.* ¶¶ 14, 21, 28, 35. But when they tested 12 sample units of the Supplement, they discovered that it contained only 2%

acetic acid. *Id.* ¶ 8. They say that "[b]y law, any product claiming to be Apple Cider Vinegar must contain a minimum of 4% acetic acid. Anything less, the product is not and cannot be called Apple Cider Vinegar as its contents are inefficacious and worthless." *Id.* ¶ 7. So they've sued, then amended their complaint, and Nature's Truth has moved to dismiss all claims.

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when [a] district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The task of the district court is to determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). The Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," although "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (citations omitted). To assess standing, the Court may also consider evidence outside the pleadings. *See Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002); *Est. of Close v. Cigna Health & Life Ins. Corp.*, 2023 WL 8846562, at *2 (S.D.N.Y. Dec. 21, 2023).

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

### I.    Plaintiffs have standing to seek damages

All four plaintiffs have standing to seek damages. They've plausibly alleged an economic injury caused by Nature's Truth that could be redressed monetarily.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Nature's Truth says there are two reasons that plaintiffs fail to allege a cognizable injury. *First*, it says plaintiffs have failed to plead an ascertainable loss because they've failed to connect any alleged misrepresentation to any alleged loss of value. Dkt. 30 at 11. But in plaintiffs' view, apple cider vinegar has various health benefits, including weight loss/management, when it contains 4–5% acetic acid. That's plausible based on the studies cited in the complaint. *See e.g.*, FAC ¶¶ 43 n.3, 45 n.7, 61 n.23. Plaintiffs also allege that the Supplements they bought contain only 2% acetic

acid, and that the decreased percentage of acetic acid makes the Supplements worth less than what plaintiffs paid for them. *Id.* ¶ 41. That's plausible based on the studies plaintiffs cite, taken together with the FDA's guidance stating that apple cider vinegar should not be diluted below 4%,[1] and New York law's mandate that apple cider vinegar is adulterated if it contains below 4% acetic acid. FAC ¶¶ 54, 60 (citing New York Laws Agriculture & Markets (AGM), Chapter 69, Article 17 § 207(7)). In other words, it's plausible that apple cider vinegar's health benefits are tied to its acetic acid content such that a marginally lower acetic acid percentage could mean marginally decreased health benefits.[2] Taking those allegations as true, plaintiffs have asserted a classic price-premium theory that supports an injury in fact. *Hicks v. L'Oreal U.S.A., Inc.*, 2023 WL 6386847, at *7 (S.D.N.Y. Sept. 30, 2023) ("Such a price-premium theory of injury has been broadly accepted in the Second Circuit."). And that injury could be redressed through a partial or full refund.

Second, Nature's Truth says plaintiffs haven't plausibly alleged that they "suffered an injury because of a defect or misrepresentation in the product *they purchased*," so they haven't shown a particularized injury. Dkt. 30 at 8 (emphasis in original); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (holding that the asserted injury "must affect the plaintiff in a personal and individual way" (quotation omitted)). The parties agree this inquiry boils down to whether plaintiffs have "meaningfully link[ed]" the tested Supplements to the Supplements they originally purchased. *Hicks*, 2023 WL 6386847, at *9; Dkts. 30 at 8; 32 at 6. "[T]o determine whether a meaningful link exists between the results of testing and a plaintiff's actual purchases, courts consider the temporal proximity of a plaintiff's actual purchases and the purchases of the products tested; the number of samples tested; how widespread the mislabeling was in the samples; and, to the extent relevant, geographic proximity." *Dunning v. Supergoop, LLC*, 2026 WL 501627, at *5 (S.D.N.Y. Feb. 24, 2026).

At this stage, plaintiffs have plausibly alleged a meaningful link: They say they tested "12 representative samples" of the Supplement using a well-accepted method, and they've identified the lot numbers for those samples, which were available for sale and consumption during the same time when plaintiffs regularly purchased the Supplement. FAC ¶ 63. Both the purchased Supplements and tested Supplements were manufactured by Nature's Truth and subject to current good-manufacturing-practice regulations. Dkt. 32 at 7 (citing FAC ¶ 57). Although the tested Supplements were purchased online, it is reasonable to infer that the Supplements that plaintiffs purchased in brick-and-mortar stores had the same acetic acid content as those sold online at the same time,

---

[1] To be clear, the FDA's Compliance Policy Guide ("CPG") on the labeling of vinegars is nonbinding. *See* CPG § 525.825 Vinegar, Definitions - Adulteration with Vinegar Eels, https://www.fda.gov/media/71937/download (last visited March 16, 2026). And plaintiffs concede that they don't seek to enforce any violation of federal law. Dkt. 32 at 9.

[2] Plaintiffs allege more—that the Supplement is "a worthless placebo," FAC ¶ 55, relative to supplements containing 4% acetic acid. But for the reasons discussed below, *those* allegations are currently too conclusory.

especially since the Supplements aren't advertised as containing any particular acetic acid percentage. (In other words, it is reasonable to infer that ~2% acetic acid in the Supplement was the norm, not a mistake, and Nature's Truth doesn't seem to contest that.)[3] For those reasons, plaintiffs' factual allegations support a plausible inference that the "third party's [test] analysis can be reasonably extrapolated to the plaintiff's individual purchase," *Kell v. Lily's Sweets, LLC*, 2024 WL 1116651, at *5 (S.D.N.Y. Mar. 13, 2024) (collecting cases). That satisfies the "low threshold required to plead injury in fact." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 738 (2d Cir. 2017) (quotation omitted).

## II.   Plaintiff Holder's claims based on GBL Sections 349 and 350 survive, and all other claims are dismissed without prejudice

The Supplement doesn't promise any health benefit. It doesn't promise any specific acetic acid content.[4] It does say it is apple cider vinegar. The question is whether that's misleading. No one disputes that the Supplement is made with apples "crushed and pressed to extract the juice which is then fermented in a two-stage process of alcoholic fermentation, then acetic acid fermentation," and then converted into powder. FAC ¶¶ 43–44. The question is whether the acetic acid concentration of the Supplement, around 2%, means that the Supplement didn't really contain apple cider vinegar in the way consumers would expect.

Plaintiffs bring claims under New York, California, and Pennsylvania laws. Starting with New York, the state mandates a 4% acetic acid threshold that covers products like the Supplement. So the New York claims advanced under the GBL clearly survive.

Accepting plaintiffs' well-pleaded factual allegations as true, the Supplement is "adulterated" under New York law because it contains "less than four grams of acetic acid in one hundred cubic centimeters of the vinegar at twenty degrees centigrade." New York Laws Agriculture & Markets (AGM), Chapter 69, Article 17 § 207(7). The next section of the statute states: "No person, firm or corporation shall manufacture, sell, offer, expose or have in possession for sale in this state . . . [a]ny vinegar defined herein not in compliance herewith," e.g., adulterated apple cider vinegar. *Id.* § 208. So Nature's Truth misrepresented that its product was marketed and sold lawfully when it wasn't, and any reasonable consumer in New York would have assumed that the Supplement was marketed and sold lawfully.

Nature's Truth doesn't specifically address the claims—asserted by plaintiff CarolAnne Holder—under GBL sections 349 and 350, which prohibit deceptive consumer business practices

---

[3] Plaintiffs allege that the Supplements they tested "contain on average 23.53 mg of acetic acid, less than half than the amount of acetic acid necessary" to reach 4% acetic acid. FAC ¶ 66. Drawing reasonable inferences in plaintiffs' favor, they've plausibly alleged that *all* samples they tested contained below 4% acetic acid. *Contra* Dkt. 35 at 8.

[4] Plaintiffs admit they "have not alleged that Defendant made any representation regarding its acetic acid content, nor that any reasonable consumer looking at their Product label would think they had." Dkt. 32 at 14.

and false advertising (i.e., advertising that is misleading in a material respect). In any event, Holder has stated her claims under both sections. To state a claim under either Section 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Holder has alleged that 1) the labeling, marketing, and sale of the Supplement in New York 2) was materially misleading and deceptive with regard to its legality, and 3) caused her injury because she would have purchased the Supplement on different terms (or not at all) if she'd known the truth. FAC ¶¶ 35–39, 77.

That's enough to pursue a claim for damages. But Holder lacks standing to pursue injunctive relief. For one thing, Holder can't plausibly meet the standard for such relief, given that she's now aware of the misrepresentation, and thus there is no risk of being harmed in the future. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). In addition, she alleges only that she "would be willing to purchase" the Supplement again, FAC ¶ 88, and "conditional statements of a consumer's intent to repurchase a product are insufficient to allege a likelihood of future injury," *Brown v. Kerry Inc.*, 2021 WL 5446007, at *11 (S.D.N.Y. Nov. 22, 2021) (denying request for injunctive relief).

The Court next turns to plaintiffs' claims under California and Pennsylvania law. Unlike New York law, California law doesn't require a minimum of 4% acetic acid for apple cider vinegar powder capsules such as the Supplement at issue here. As plaintiffs correctly point out, California requires 4% or more acetic acid for apple cider vinegar used in "Mexican Style Chorizo." Cal. Code Regs. Tit. 3, § 911.1 - Mexican Style Chorizo. But the Supplement isn't Mexican Style Chorizo (or part of any such product), and plaintiffs haven't pointed to any California law that prohibits apple cider vinegar dietary supplements with below 4% acetic acid. Plaintiffs also fail to identify any Pennsylvania law that mentions apple cider vinegar.

So for the California and Pennsylvania claims, the question is whether, on a fundamental level, Nature's Truth deceived consumers when touting the Supplements as containing apple cider vinegar, when they lacked any of the attributes of apple cider vinegar that consumers would reasonably expect. Along these lines, plaintiffs assert that apple cider vinegar powder capsules "contain[ing] approximately 2.0% acetic acid" are "inert and worthless for their intended purpose," FAC ¶ 8, and that a "failure to provide the minimum of 4% acetic acid eliminates any of the potential health benefits that could be derived from consuming apple cider vinegar, thereby rendering this [Supplement] a worthless placebo," FAC ¶ 55. Those allegations are conclusory. Plaintiffs cite no direct evidence that apple cider vinegar powder capsules with 2% acetic acid lack all health benefits they say are present at 4% acetic acid. And any circumstantial evidence they cite—i.e., New York, California, and Michigan laws and an FDA guideline (that arguably applies only to liquid) saying that some products with apple cider vinegar below 4% acetic acid are considered adulterated—isn't enough to nudge those allegations across the line from conceivable to plausible.

That said, if plaintiffs can support their allegations that the Supplement at 2% acetic acid is known to be worthless for its intended purpose, then it's plausible that Nature's Truth could have

capitalized on plaintiffs' reasonable expectations about the health benefits of apple cider vinegar products by selling them a worthless product. So plaintiffs will have one last opportunity to amend their complaint to add non-conclusory allegations supporting their claims under California and Pennsylvania law. This includes the express-warranty claims, because if the label saying "apple cider vinegar" was misleading because the Supplement lacked any of the attributes of apple cider vinegar that consumers would reasonably expect, then the claims potentially have legs. Of course, Nature's Truth will have the opportunity to oppose any amendment that plaintiffs choose to offer along these lines.

## CONCLUSION

For the reasons discussed above, Holder's claims for damages based on GBL sections 349 and 350 survive. *See* FAC ¶¶ 157–67. The rest of plaintiffs' claims are dismissed with leave to amend the complaint by April 2, 2026.

The Clerk of Court is respectfully directed to terminate Dkt. 29.

SO ORDERED.

Dated: March 19, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge